The issue in this case is whether the trial court erred in entering a summary judgment in favor of the defendant — a vendor of farm equipment — on the plaintiff's claim that the defendant was liable for injuries that the plaintiff alleges were caused by a defective power auger. We affirm.
The plaintiff, Raymond Kirk, was injured on November 26, 1990, when his left leg became entangled in a power auger while he was assisting his uncle, Ronald Folsom, in digging holes for fence posts. Folsom had borrowed the auger from another relative, Glenn Buttram, Sr. As a result of the accident, *Page 866 
Kirk filed this action against Garrett Ford Tractor, Inc., alleging liability under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). According to the record, the auger in question, bearing serial number 3712, was manufactured by the Danuser Machine Company, Inc., in January 1985, and was sold to Lovett and Tharpe, Inc., who then placed it on consignment to Freddie Wilhite, d/b/a Wilhite Tractor 
Equipment Company. After a fire at Wilhite Tractor Equipment Company, Lovett and Tharpe reacquired the auger and later sold it to Garrett Ford Tractor. Glenn Buttram, Sr., testified that he purchased the auger from Garrett Ford Tractor. Although Garrett Ford Tractor says it can find no record of the reported sale to Glenn Buttram, Sr., it concedes in its brief that there are factual issues pertaining to the identity of the seller. Therefore, we will consider Garrett Ford Tractor the seller for the purposes of this appeal.
Raymond Kirk contends that his left leg became entangled in the auger at an exposed universal joint linking the power take off ("PTO") shaft and the gear box. Safety shields were provided by the manufacturer, Danuser, to completely enclose the universal joints. According to John Rex, Danuser's vice president for engineering, the auger was shipped by Danuser accompanied by these safety shields. The record indicates that the universal joint of auger No. 3172 was enclosed in protective shields both when it was purchased by Glenn Buttram, Sr., and when Buttram used the auger himself prior to Kirk's accident. Garrett Ford Tractor maintains that sometime between Buttram's use and the date of Raymond Kirk's accident, the auger underwent a substantial change — that the protective shields were removed and displaced, thereby exposing the universal joint and enabling Mr. Kirk's leg to come in contact with that joint. The trial court entered a summary judgment for the defendant, and the plaintiff appeals.
The standard for reviewing a summary judgment is the same as the standard for granting the motion; we must determine whether there was a genuine issue of material fact, and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant.Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v.Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See alsoHanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
Under the substantial evidence rule the nonmovant, in order to defeat a properly supported summary judgment motion, must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989).
This Court has stated the elements of a claim under the AEMLD:
" 'To establish liability, a plaintiff must show:
 " '(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 " '(a) the seller is engaged in the business of selling such a product, and
 " '(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it [was] sold.' "
Yamaha Motor Co. v. Thornton, 579 So.2d 619, 621 (Ala. 1991) (quoting Casrell v. Altec Indus., Inc., 335 So.2d 128, 132-33
(Ala. 1976)).
In support of the motion for summary judgment, Garrett Ford Tractor offered the testimony of Glenn Buttram, Sr., who purchased the auger from Garrett Ford Tractor and who lent it to Folsom for Mr. Kirk to use in installing the fence on the Folsom ranch. Mr. Buttram testified that he lent the auger to Folsom "probably a month and a half or two months before the accident." Mr. Buttram also testified that the auger was returned approximately a month and a half after the accident, which occurred in November 1990. Mr. Buttram testified that when the auger left his hands, the universal joint *Page 867 
was adequately guarded. Mr. Buttram stated that the next time he used the auger was in the spring of 1991 and that it was at that time that he noticed that the protective shield was not in place. Mr. Buttram testified that up until the accident, he had used the auger to dig 50 to 75 holes and that it had worked fine.
In support of its motion for summary judgment, Garrett Ford Tractor also presented excerpts from the plaintiff's deposition. The plaintiff, Raymond Kirk, testified that his leg became tangled up in the area "immediately above the guard that appears on the bar take off shaft." The plaintiff also testified that he did not know if anyone had made any changes to the auger before his accident. Specifically, he testified that he had been told that the auger was new and that it had been used only once or twice. He also testified that he could not recall whether the shield was in place on the day of the accident. He said he did remember that there was a warning on the auger; however, he said he could not remember what the warning said. Garrett Ford Tractor maintains that this warning cautions against operating the auger without the equipment shields in place because of the danger inherent in the rotating universal joint.
The plaintiff's memorandum in opposition to Garrett Ford Tractor's motion for summary judgment maintains that Garrett Ford Tractor failed to submit evidence of any substantial change or alteration of the auger, and, therefore, that a question of fact exists as to whether the guard fell off because of a defective design. A "defect" within the meaning of the AEMLD is something that renders a product unreasonably dangerous. The question of whether a product is unreasonably dangerous is ordinarily for the trier of fact. Entrekin v.Atlantic Richfield Co., 519 So.2d 447 (Ala. 1987).
The mere fact that a product has been altered after its sale does not necessarily relieve the seller of liability.Johnson v. Niagara Machine Tool Works, 555 So.2d 88, 91
(Ala. 1989). Instead, the question of a seller's liability under the AEMLD for injuries caused by a defective product that has been altered after it was sold turns upon whether the defect causing the injury existed in the product as it was sold or was created by the alteration. Banner Welders, Inc. v. Knighton,425 So.2d 441, 451 (Ala. 1982) (citing Annotation, ProductsLiability: Alteration of Product After It Leaves Hands ofManufacturer or Seller as Affecting Liability forProduct-Caused Harm, 41 A.L.R.3d 1251, 1253 (1972)). When a defect created by an alteration to a product after it left the seller's control is the factual and proximate cause of an injury, and the alteration was not foreseeable, the alteration amounts to an intervening or superseding cause of the injury and relieves the seller from liability under the AEMLD. SeeBurkett v. Loma Machine Manufacturing, Inc., 552 So.2d 134, 136
(Ala. 1989) (modifying the blade guard on a billet saw to expose an additional 15 inches of the blade was a substantial change that relieved the manufacturer of liability); Fenley v.Rouselle Corp., 531 So.2d 304, 306 (Ala. 1988) (removing the safety devices from a machine press constituted a superseding cause of an employee's accident and relieved the press's manufacturer of liability).
Through depositions and photographs, submitted to the trial court with the motion for a summary judgment, Garrett Ford Tractor made a prima facie showing that when the auger left its control the safety shields were attached to completely enclose the universal joints and prevent accidents such as the one that caused Kirk's injuries. Kirk presented no substantial evidence to rebut this showing. Because the presence of the safety shield would have prevented Kirk's accident, we must conclude that the removal of the shield was a substantial change that relieved Garrett Ford Tractor from liability. Mere proof that an accident and injuries occurred is not enough to establish a prima facie case under the AEMLD. Jordan v. General MotorsCorp., 581 So.2d 835, 836 (Ala. 1991).
Based on the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur. *Page 868