HOLMES, Retired Appellate Judge.
Allstate Insurance Company and Electra Ceruzzi appeal from a summary judgment entered in favor of Mitsubishi Electronics America, Inc. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
*1307 Our review of the record reveals the following pertinent facts: Anthony Ceruzzi purchased a Mitsubishi television on October 4, 1991. On April 26, 1992, approximately six months later, the Ceruzzis’ home was destroyed by fire. Allstate, the Ceruzzis’ insurance company, reimbursed the Ceruzzis a total of $52,558.13, for damages relating to the fire.
On April 27, 1992, Allstate employed Jeff Crain, an expert, to investigate the cause of the fire. In his report to Allstate, Crain stated that the fire was caused by an electrical malfunction in the television’s power cord.
On April 26, 1994, Allstate and Electra Ceruzzi, Anthony Ceruzzi’s wife, filed a mul-ti-count complaint against Mitsubishi. We would note that Anthony Ceruzzi died prior to the filing of the complaint. In the complaint Allstate asserted a subrogation claim to recover the amount that it had reimbursed the Ceruzzis. Accordingly, Ceruzzi sought to recover damages for losses suffered over and above the policy limits. Specifically, she sought to recover damages under the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”), damages for breach of express and implied warranties, and damages under the Magnuson-Moss Warranty Act.
On June 11,1997, Mitsubishi filed a motion for a summary judgment, pursuant to Rule 56(c), Ala. R. Civ. P. Ceruzzi and Allstate (hereinafter referred to as Ceruzzi) responded with a motion in opposition. Both parties relied on the deposition testimony of Jeff Crain, Ceruzzi’s expert witness. On August 5, 1997, following a hearing, the trial court entered a summary judgment in favor of Mitsubishi on all counts.
Ceruzzi appeals.
At the outset we note that Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie case showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d 682.
In Atkins v. American Motors Carp., 335 So.2d 134, 141 (Ala.1976), our supreme court stated the following criteria that Ceruz-zi must present in order establish liability under the AEMLD:
“ [Ceruzzi] must prove [she] suffered injury or damages to [herself] or [her] property by one who sold a product in a defective condition unreasonably dangerous to [Ce-ruzzi] as the ultimate user or consumer, if
“(a) the seller was engaged in the business of selling such a product, and
“(b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.”
In Jordan v. General Motors Carp., 581 So.2d 835, 836-37 (Ala.1991), our supreme court emphasized the following:
“[M]ere proof that an accident occurred with resulting injuries is insufficient to establish fault under the AEMLD. Rather, because the AEMLD is a fault-based cause of action, [Ceruzzi] must affirmatively show that the [television] was sold with a defect or in a defective condition. [Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So.2d 991 (Ala.1981) ]. The terms ‘defect’ and ‘defective,’ as applied under the AEMLD, have been defined as follows:
“ ‘[A] “defect” is that which renders a product “unreasonably dangerous,” i.e., not fit for its intended purpose....
[[Image here]]
“ ‘ “Defective” is interpreted to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. Comment g. of the Restatement [Second of Torts (1965) ] says defective condition applies when, at the time the product leaves the *1308 seller’s hands, it is in a condition not contemplated by the ultimate consumer.’
“Casrell[v. Altec Industries, Inc.], 835 So.2d [128,] 133 [ (Ala.1976) ].”
(Emphasis added).
In support of its motion for a summary judgment, Mitsubishi relied on the deposition testimony of Ceruzzi’s expert, who testified as follows:
“Q. Now, ... I’ve seen your report. In summary, what is your opinion?
“A. My opinion is the fire ... was caused by an electrical malfunction on the power cord serving the television set.
“Q. Okay. And what was the electrical malfunction?
“A. It appears to be a short circuit and a combination of some resistance heating of one or more of the conductors in the cord.
“Q. What caused a short?
“A. I don’t know. I suspect that there was some sort of injury to the cord.
“Q. Such as being pinched up against the wall perhaps?
“A. I didn’t find any evidence to indicate it had been pinched at all.
“Q. Did you find any evidence at all that there had been some damage to the cord?
“A. No, sir, I could not find that. The area where the apparent injury may have been was destroyed during the fire.
“Q. Okay. So your testimony is there was some short in the cord itself, correct?
“A. Yes, sir.
[[Image here]]
“Q. But what caused the short, you’re not sure of, correct?
“A. Correct.
“Q. But one possibility is that there was some damage to the cord?
“A. That’s correct.
“Q. And can you tell me, please, sir, when the damage occurred to the cord that caused the short?
“A. I don’t know when it would have been caused, if it was.
“Q. A cord can certainly be damaged without there being some defect in the cord itself. You agree "with that, don’t you?
[[Image here]]
“A. That’s true.
[[Image here]]
“Q. Okay. So let me be specific about this. Sitting here today, you can’t say that the alleged damage to the cord was caused by some defect in the manufacturing process, correct?
“A. I can’t say that it did, nor that it didn’t.
“Q. Okay. You can’t say that the damage to the cord was caused by some negligence or other improper conduct on the part of Handy TV, the entity that sold this TV to the Ceruzzis. You can’t say that one way or the other, can you?
[[Image here]]
“A. That’s correct.
“Q. And you can’t say that the damage to the cord was caused by the Ceruzzis?
“A. That’s right.”
In essence, the expert testified that there was some kind of electrical malfunction in the television’s electrical cord. And, while he suspected that the malfunction was caused by an injury to the cord, he, nevertheless, indicated that he did not find any evidence of an injury, because the area where the apparent injury may have been was destroyed during the fire.
Furthermore, if there were an injury to the cord, the expert could not state how the injury occurred or when the injury occurred, i.e., while in Mitsubishi’s control or while in Ceruzzi’s control. Without such evidence, one could assume that any alleged damage to the cord occurred while in Ceruzzi’s control. As noted previously, Anthony Ceruzzi purchased the television on October 4, 1991, and the fire occurred on April 26, 1992. Ceruzzi testified that during the weeks prior to the fire, the television had, on at least two different occasions, mysteriously “cut off,” but immediately came back on. Ceruzzi did not report these incidents to anyone. Ceruzzi testified that the television otherwise functioned properly. The expert testified that it *1309 was possible that a defective electrical outlet could have caused such a phenomenon.
As noted previously, the AEMLD is a fault-based cause of action. In other words, “[w]ithout evidence to support the conclusion that the [television] was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained.” Jordan, 581 So.2d at 837. Thus, in order for Ceruzzi to withstand Mitsubishi’s properly supported summary judgment motion, she must proffer substantial evidence to indicate that the television was in a defective condition when it left the seller’s control. Ceruzzi offered no such evidence. Instead, Ceruzzi merely speculates that any alleged defect in the cord occurred while in the seller’s control. It is well settled that “[e]vidence that affords nothing more than mere speculation, conjecture, or guess is completely insufficient to warrant the submission of a case to the jury.” Smoyer v. Birmingham Area Chamber of Commerce, 517 So.2d 585, 588 (Ala.1987).
In light of the foregoing, Ceruzzi failed to establish liability under the AEMLD. Accordingly, without any evidence regarding liability on the part of Mitsubishi, we preter-mit discussion of the remaining issues raised by Ceruzzi.
Consequently, the summary judgment entered in favor of Mitsubishi is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.
MONROE, J., concurs in the result.